## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **MICHAEL ANDRE BRYANT,** | } | |
| | } | |
| **Petitioner,** | } | |
| | } | |
| **v.** | } | **Case No.: 2:10-cv-8044-RDP-JHE** |
| | } | **2:07-cr-389-RDP-RRA** |
| | } | |
| **UNITED STATES OF AMERICA,** | } | |
| | } | |
| **Respondent.** | } | |

### <u>MEMORANDUM OPINION</u>

Before the court is a Motion to Vacate, Set Aside, or Correct Sentence filed on August 18, 2010  pursuant to 28 U.S.C. § 2255 by Petitioner Michael Andre Bryant, a federal prisoner.  (Civ. Doc. #1).[1]  Petitioner challenges his conviction on the ground that he received ineffective assistance of counsel.  (Civ. Doc. #1 at 14-15).  Petitioner has been represented by counsel in this proceeding[2] and the motion has been fully briefed.  (*See* Civ. Docs. #1, 12, and 50).  Based on the briefs and the evidence in the record, the court finds that the motion is due to be denied.

### I.  BACKGROUND

On December 10, 2006, while patrolling an area known for drug activity, Birmingham Police Officer Matthew Hutchins noticed two cars parked together in the middle of the road with the drivers' windows meeting.  (Crim. Doc. #46 at 67-68).  As he approached, the cards abruptly

---

[1] There are two dockets referenced in this memorandum: (1) the underlying criminal trial in which Petitioner was convicted (*United States v. Bryant*, Case No. 2:07-cr-389); and (2) the instant civil action brought under 28 U.S.C. § 2255 (*Bryant v. United States*, Case No. 2:10-cv-8044). To avoid confusion, documents from the former criminal docket are marked with "Crim. Doc." and documents from the § 2255 civil docket are marked with "Civ. Doc."

[2] Although the court previously appointed counsel for Petitioner, he has no right to counsel in a post-conviction action and, recently, has asked the court to discharge his attorney.  The court obliged his request but will not appoint additional counsel for him.  (*See* Doc. #69).

separated.  (*Id.*).  Officer Hutchins became suspicious and followed one of the cars, a 1995 Buick LeSabre.  (*Id.* at 71).  While following the car, Officer Hutchins ran the license plate number through the NCIC database which indicated that the car had been reported stolen.  (*Id.* at 71-72).  Alerted to this information, the officer called the dispatcher, who confirmed that the car had in fact been reported stolen.  (*Id.* at 72-73).  Officer Hutchins activated his lights and pulled over the vehicle. (*Id.* at 74).  He found Petitioner in the driver's seat and attempted to place him under arrest; however, Petitioner resisted, broke free, and began to run.  (*Id.* at 79-80).  Officer Hutchins pursued Petitioner on foot with assistance from Officer Heather Campbell, who had just arrived on the scene.  (*Id.* at 83-84).  During the ensuing chase, the officers saw Petitioner throw a shiny silver object towards the ground.  (*Id.* at 89).

Petitioner was eventually apprehended and taken into custody.  (Crim. Doc. #46 at 117). Meanwhile, Officer Campbell retraced the path taken by Petitioner during the chase to find the object he had tossed.  (*Id.* at 110).  She found a loaded, chrome-plated 9mm pistol.  (*Id.* at 111).  Officer Hutchins later searched Petitioner's car.  (Crim. Doc. #47 at 161).   From inside the glove compartment, he recovered a bag containing 27.9 grams of cocaine hydrochloride, two bags containing a total of 73.5 grams of "crack" cocaine, and an electronic scale.  (Crim. Doc. #47 at 145). Police also recovered $2,091 in cash and two cell phones.  (*Id.* at 97-98).  Inside one of the cell phones was a wallpaper photograph of Petitioner holding a semi-automatic pistol.[3]  (*Id.* at 189). After being *Mirandized*, Petitioner indicated that he wanted to talk and signed a sworn statement admitting to possessing both the gun and the drugs.  (*Id.* at 181-86).

---

[3] The pistol in the picture was different from the one Petitioner tossed during the chase.

On September 27, a federal grand jury returned a three-count Indictment against Petitioner, charging him with: (1) one count of Possession With Intent to Distribute Cocaine Base (crack cocaine) and Cocaine Hydrochloride in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 841(b)(1)(C); (2) one count of Using and Carrying a Firearm During and in Relation to a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c)(1)(A); and (3) one count of being a Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1).  (Crim. Doc. #1).  Petitioner, through his attorney, William K. Bradford, pled not guilty.

Prior to trial, Petitioner drew the court's attention to the fact that the car was not stolen. Police later determined that, before the incident, Charles Bryant (no relation to Petitioner) had sold the car to Petitioner, but had kept the registration in his name.  (Crim. Doc. #47 at 181).  Around three weeks before Petitioner's arrest, police had impounded the car after Petitioner's brother, Nicholas Bryant, was arrested for drug possession.  (*Id.* at 3).  Following Nicholas' arrest, Petitioner contacted Charles Bryant and instructed him, as the registered owner, to falsely report the car as stolen.  (*Id.* at 183-84).  Charles called the Birmingham Police Department the next day to report the car as stolen, which created a report in the NCIC database listing the vehicle as stolen.  (*Id.* at 184-85).  Seven days later, Charles retrieved the vehicle and returned it to Petitioner.  (*Id.* at 185-86). However, the vehicle's status continued to appear as having been reported stolen in the NCIC database when Officer Hutchins consulted it. (*Id.*).

Because Officer Hutchins had relied on inaccurate information, Petitioner's attorney moved to suppress the evidence and the incriminating statements delivered to the police on the ground that Officer Hutchins lacked a reasonable suspicion to stop and search the car and therefore no good faith basis existed for Petitioner's arrest.  (Crim. Doc. #10).  The court denied that motion, finding that

Officer Hutchins had a reasonable suspicion of criminal activity based on his observations that night, Petitioner's attempt to flee, the report that the car was stolen, and the officer's honest belief that Petitioner was driving a stolen car.  (Crim. Doc. #45 at 52-54).

Following a four-day trial, the jury convicted Petitioner of all counts.  (Crim. Doc. #32).  On May 14, 2008, Petitioner was sentenced to life imprisonment for Count One, a 120-month concurrent sentence for Count Two, and a 60-month consecutive sentence for Count Three.  (Crim. Doc. #39).

Petitioner appealed his case to the Eleventh Circuit, which affirmed his conviction on August 13, 2009.  (Crim. Doc. #56).  Petitioner subsequently petitioned the United States Supreme Court for a writ of *certiorari*.  (Crim. Doc. #57).  That petition was denied on December 8, 2009.  (Doc. #60).

Petitioner filed this instant habeas motion on September 28, 2010.  (Civ. Doc. #1).  The court appointed Jonathan Cross to represent Petitioner in this proceeding.  (Civ. Doc. #7).  Because the motion was timely filed and  does not appear to be a successive petition, the court has jurisdiction to consider this matter.  *See* 28 U.S.C. § 2244(b)(3)(A).

## II.  PETITIONER'S ARGUMENTS

In support of his § 2255 motion, Petitioner alleges that his counsel provided ineffective assistance in eleven aspects.  For the sake of organization, the court has reordered the claims by topic. Petitioner's arguments roughly fall into three broad categories.  Six of Petitioner's ineffective assistance claims concern perceived deficiencies in his attorney's performance during the suppression hearing.  Two of those claims suggest arguments that Petitioner believes his attorney should have made to suppress other evidence.  Three claims raise arguments Petitioner asserts his

attorney should have made on appeal.  The court addresses each of them below.  None of them have any merit.

### A.    Claims Regarding the Suppression Hearing

Most of Petitioner's ineffective assistance claims relate to a suppression hearing the court held immediately before the trial in which Petitioner's attorney sought to suppress the evidence gathered pursuant to the evidence gathered from the car and the statements made by Petitioner on the night of December 10, 2006.  (*See* Crim. Doc. #45).  Petitioner's attorney proceeded on the theory that the arresting officer, Officer Hutchins, lacked reasonable suspicion to stop Petitioner on the night of the arrest because the information upon which he relied, the NCIC entry that indicated that the car had been stolen, was inaccurate.  (*Id.* at 12).  Had the entry not listed the car as having been stolen, Petitioner surmises, Officer Hutchins would not have had reasonable suspicion to stop the car and Petitioner's arrest would have stemmed from an unlawful search and seizure. Questioning by Petitioner's attorney showed that Officer Hutchins had not previously encountered the car, or had reason to believe before consulting the NCIC database that the car had been stolen. (Crim. Doc. #45 at 43-44).  Officer Hutchins testified, however, that his suspicions arose before checking the NCIC database due to the history of the neighborhood, the way in which the cars were parked in the middle of the road with the drivers facing each other, and the abruptness with which the cars departed when he approached.  (*Id.*).

A key assumption underlying Petitioner's theory (other than the assumption that the only basis Officer Hutchins had for stopping Petitioner's car  is that it was reported as having been stolen in the NCIC database) is that the NCIC database maintains a single entry for each car that is updated to indicate the current status of the car.  Testimony at the suppression hearing undermined this

assumption.  Petitioner's attorney subpoenaed Ms. Djuana Smith, an administrative assistant at the Birmingham Police Department, and Sergeant Benjamin Treadaway, an officer at the auto theft division of the Birmingham Police Department, to testify at the hearing.  (Crim. Doc. #45 at 4).  Ms. Smith did not arrive at the court in time for the suppression hearing, so Petitioner's attorney began the suppression hearing by examining Sergeant Treadaway.  (*Id.* at 4, 17).  Sergeant Treadaway testified that the NCIC database does not update the entry of a car based on the VIN number, so that a report that a car has been stolen would actually create a separate entry.  (*Id.* at 22).  The Department, Treadaway testified, did not have the technology to synchronize the entries.  (*Id.*).

The court ultimately ruled against Petitioner on his motion to suppress the evidence.  (Crim. Doc. #45 at 51-54).  What mattered for determining whether Officer Hutchins had reasonable suspicion to stop Petitioner was not whether, after the dust had settled, all the facts Officer Hutchins relied upon in reaching his decision were actually true and accurate.  Reasonable suspicion does not require such an exacting burden.  Rather, the questions is whether, in the heat of the moment, Officer Hutchins acted in good faith based on the best information available to him.  The court concluded that he did. (*Id.* at 54).  Before Officer Hutchins consulted the NCIC database, the suspicious circumstances of the exchange between the two parked cars in an area known for drug crimes had already aroused in him a reasonable suspicion that something illicit was underfoot.  (*Id.* at 52-54).  Officer Hutchins checked the NCIC database on his mobile monitor, learned the car was reportedly stolen, and called a dispatcher to confirm the status of the car.  (*Id.* at 41).  One of the charges made against Petitioner that night was for receiving stolen property.  (*Id.* at 53).  All of these factors led the court to conclude that Officer Hutchins acted in good faith.  (*Id.* at 54).

During the trial, the Government called upon Ms. Smith to testify.  When asked whether the "stolen car indicator" for the Buick had been removed when Charles Bryant retrieved it, Ms. Smith answered in the affirmative.

### 1.    First Claim: Counsel Failed to Investigate and Interview a Witness.

Believing that Ms. Smith's testimony would have changed the result of the suppression hearing, Petitioner infers that his attorney must have failed to properly investigate potential witnesses because he neglected to call Ms. Smith to testify at the suppression hearing.  (Civ. Doc. #1 at 28).  This, he argues, constitutes ineffective assistance of counsel.  (*Id.*).  Petitioner theorizes that, had his attorney properly investigated the possibility of examining Ms. Smith at the suppression hearing, he would have called her to the stand and her testimony could have been used to impeach Officer Hutchins' testimony, which could have in turn undermined the court's confidence in its decision to deny his motion to suppress.  (*Id.* at 29-30).

### 2.    Second Claim: Counsel Failed to be Adversarial by Calling Government Witness to the Stand during Suppression Hearing and by Not Calling Government Witness to the Stand during Suppression Hearing.

Furthermore, in conjunction with the failure to investigate the possibility of using Ms. Smith as a witness, Petitioner separately alleges that the failure to call her to the stand at the suppression hearing constitutes ineffective assistance of counsel.  (Civ. Doc. #1 at 26).  Petitioner's attorney subpoenaed Ms. Smith to appear at the suppression hearing, but she did not show up by the time the suppression hearing began.  (Crim. Doc. #45 at 4).  As a result, Petitioner's attorney decided to begin by using the witnesses who were already available.  (*Id.* at 17).  Petitioner argues that his attorney's decision not to call Ms. Smith to the stand shows that he failed to be adversarial.

Petitioner further alleges that his attorney failed to be adversarial at the suppression hearing when he called upon Sergeant Treadaway and Officer Hutchins to testify.  Because his attorney examined the same police officers that the Government later called to the stand during trial, Petitioner alleges that he essentially had acted as the prosecutor.  (*Id*. at 25).

### 3.     Third Claim: Counsel Failed to Correct "False" Testimony by Witness.

Sergeant Treadaway stated at the suppression hearing that the Birmingham Police Department does not have the technology to reconcile a stolen vehicle report with the NCIC entry, but rather creates a separate entry for a vehicle reported stolen.  (Crim. Doc. #45 at 22).  Petitioner believes that Ms. Smith's testimony at trial contradicts Sergeant Treadaway's statement and argues that his lawyer was ineffective for failing to correct the "false" testimony that Sergeant Treadaway gave at the suppression hearing.  (Civ. Doc. #1 at 20-21).

### 4.     Fourth Claim: Counsel Failed to Call Detective to Stand.

Three weeks prior to his arrest in this case, Petitioner and his brother, Nicholas Bryant, were arrested by Detective Boackle for a drug offense involving the same 1995 Buick LeSabre.  (Crim. Doc. #47 at 166-67).  At the time of the arrest, the car had not yet been reported stolen.  (Petitioner asked the registered owner, Charles Bryant, to report the car as stolen the day after that arrest).  Therefore, Petitioner reasons, Detective Boackle would have known that the car was not actually stolen.  Although Detective Boackle was not actually present with Officer Hutchins when Hutchins first found Petitioner's activities suspicious, Petitioner insists that Officer Hutchins (constructively, if not actually) knew what Detective Boackle knew because "his knowledge can be shared or imputed to Officer Hutchins."  (Civ. Doc. #1 at 35).  Therefore, Petitioner asserts that Detective

8

Boackle's testimony would have been favorable to his defense, and Petitioner's attorney provided ineffective assistance in failing to call him to the stand.

### 5. Fifth Claim: Counsel Failed to Use Dispatch Report to Impeach Witness at Suppression Hearing.

Petitioner believes that an event log of communications between Officer Hutchins and the dispatcher (the "dispatch report") could have been used to impeach Officer Hutchins' testimony and claims that his attorney provided ineffective assistance by not using the dispatch report to impeach Officer Hutchins. (Civ. Doc. #1 at 35-36).

### 6. Sixth Claim: Counsel Failed to Advise Petitioner of his Right to Testify at the Suppression Hearing and Declined to Put Petitioner on Stand.

Petitioner claims that his attorney failed to advise him of his right to testify at the suppression hearing and was ineffective for deciding not to put Petitioner on the stand. (Civ. Doc. #1 at 37).

### B. The Failure to Seek Suppression of Other Evidence

### 7. Seventh Claim: Counsel Failed to Challenge the Voluntariness of Petitioner's Post-Arrest Statement.

Petitioner alleges that his attorney provided ineffective assistance by not requesting a hearing to challenge the voluntariness of Petitioner's post-arrest statements pursuant to *Jackson v. Denno*, 378 U.S. 368 (1964). (Civ. Doc. #1 at 43).

### 8. Counsel Failed to Seek Suppression of the Cell Phone Wallpaper Picture.

Petitioner alleges that his attorney provided ineffective assistance by not attempting to suppress the cell phone wallpaper picture featuring Petitioner holding a gun. (Civ. Doc. #1 at 44).

### C.     Petitioner's Claims Regarding the Direct Appeal

### 9.     Counsel Failed to Challenge the Suppression Ruling on Appeal.

Petitioner alleges that his attorney provided ineffective assistance by failing to challenge this court's suppression ruling on appeal.  (Civ. Doc. #1 at 40).

### 10.     Counsel Failed to Challenge the Composition of the Jury on Appeal.

Petitioner believes that only eleven jurors served on his jury.  (Civ. Doc. #1 at 40-41).  He alleges that his attorney provided ineffective assistance by failing to raise this issue on appeal.  (*Id.*.).

### 11.     Counsel Failed to Challenge the Prosecutor's Closing Argument Comments.

During the Government's closing argument, the prosecutor noted that Officer Hutchins traveled down a road "as good officers do" and that Charles Bryant was certain that he had sold the 1995 Buick.  Petitioner alleges that these comments constitute improper vouching by the Government.  (Civ. Doc. #1 at 45).  Furthermore, Petitioner argues that two other statements the prosecutor made during closing arguments were inappropriate because they inflamed the jury: (1) that Petitioner ran away from Officer Hutchins because he did not want to be caught and (2) that a conviction in this case would take a drug dealer off the streets.  (*Id.* at 46).  Petitioner argues his attorney provided ineffective assistance by failing to challenge these four remarks on appeal.  (*Id.*).

### III.     LEGAL STANDARDS

A motion under 28 U.S.C. § 2255 to set aside, vacate or correct a sentence of a person in federal custody entitles a prisoner to relief "[i]f the court finds that ... there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack."  28 U.S.C. § 2255(b).  The movant must specify all grounds for relief and

specifically plead all facts supporting each claim for relief.  RULES GOVERNING SECTION 2255 PROCEEDINGS FOR THE UNITED STATES DISTRICT COURTS 2(b).

**A.      Procedural Default**

A § 2255 motion, however, is not available for any garden variety claim.  Only constitutional claims, jurisdictional claims, and claims of error so fundamental as to have resulted in a complete miscarriage of justice are cognizable on collateral attack.  *See United States v. Addonizio*, 442 U.S. 178, 184-86 (1979); *Hill v. United States*, 368 U.S. 424, 428 (1962); *Richards v. United States*, 837 F.2d 965, 966 (11th Cir.1988); *Kett v. United States*, 722 F.2d 687, 690 (11th Cir. 1984). Furthermore, a § 2255 motion may not serve as a substitute for a direct appeal.  *United States v. Frady*, 456 U.S. 152, 165 (1982); *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004). Therefore, claims that could have been raised in the district court or on direct appeal, but were not so raised, are considered procedurally defaulted and generally barred from review in a § 2255 proceeding.  *McCoy v. United States*, 266 F.3d 1245, 1258 (11th Cir. 2001).  To overcome this procedural default,  a petitioner "must show both (1) 'cause' excusing his . . . procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains."  *Frady*, 456 U.S. at 168; *Black v. United States*, 373 F.3d 1140, 1142 (11th Cir. 2004).  This standard is "a significantly higher hurdle than would exist on direct appeal."  *Frady*, 456 U.S. at 166.

To show cause, a defendant must prove that "some objective factor external to the defense impeded counsel's efforts" to raise the claim previously. *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  "[C]ause ... requires a showing of some external impediment preventing counsel from

constructing or raising the claim [in question]." *Id*. at 492.[4]  To demonstrate prejudice, a petitioner

"must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of

prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial

with error of constitutional dimensions."  *Id.* at 170 (emphasis in original).  This rule applies to all

claims, including constitutional claims.  *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Wainwright v.*

*Sykes*, 433 U.S. 72, 84 (1977); *Lynn v. U.S.*, 365 F.3d at 1234; *Thornton v. United States*, 368 F. 2d

822, 825-26 (D.C. Cir. 1966).

**B.**     **Ineffective Assistance of Counsel**

A showing by a petitioner that his attorney's performance was constitutionally ineffective

may be raised for the first time in a habeas petition to demonstrate "cause" to excuse a procedural

default.  *Murray v. Carrier*, 477 U.S. at 489.  In order to establish a claim of ineffective assistance

of counsel, a petitioner is required to show that: (1) his attorney's representation fell below "an

objective standard of reasonableness"; and (2) a reasonable probability exists that but for counsel's

unprofessional conduct, the result of the proceeding would have been different.  *Strickland v.*

*Washington*, 466 U.S. 668, 104 (1984).   "The petitioner bears the burden of proof on the

'performance' prong as well as the 'prejudice' prong of a Strickland claim, and both prongs must

be proved to prevail."  *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001) (cert. denied).

To succeed in proving the "performance" prong, "the defendant must show that counsel's

performance was deficient. This requires showing that counsel made errors so serious that counsel

was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*,

---

[4] As stated in *Lomelo v. United States*, 891 F.2d 1512 (11th Cir. 1990), "[t]he 'cause and actual prejudice' standard for federal habeas petitions mirrors the standard used to evaluate collateral attacks on state convictions."  *Id.* at 1515 n. 9. Thus, in undertaking its "cause" analysis, the court may look to both § 2254 and § 2255 cases.

466 U.S. at 687. When faced with ineffective-assistance claims, "reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Smith v. Singletary*, 170 F.3d 1051, 1053 (11th Cir. 1999) (internal citations omitted). The Eleventh Circuit reviews a lawyer's conduct under the "performance" prong with considerable deference, giving lawyers the benefit of the doubt for "heat of the battle" tactical decisions. *Johnson v. Alabama*, 256 F.3d at 1176; *see also Waters v. Thomas*, 46 F.3d 1506, 1518 (11th Cir.1995) ("The test for ineffectiveness is not whether counsel could have done more; perfection is not required. Nor is the test whether the best criminal defense attorneys might have done more. Instead the test is ... whether what they did was within the 'wide range of reasonable professional assistance.'") (internal citations omitted).

To establish "prejudice," a petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* As the Eleventh Circuit has explained:

> habeas petitioners must affirmatively prove prejudice because "[a]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial." "[T]hat the error had some conceivable effect on the outcome of the proceeding" is insufficient to show prejudice.

*Gilreath v. Head*, 234 F.3d 547, 551 (11th Cir. 2000) (quoting *Strickland*).

When applying the *Strickland* standard, it is clear that courts "are free to dispose of ineffectiveness claims on either of its two grounds." *Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 1998) (internal citations omitted) (cert. denied); see also *Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004) ("[O]nce a court decides that one of the requisite showings has not been

made it need not decide whether the other one has been."). Conclusory allegations unsupported by specifics and contentions that are wholly incredible in the face of the record are subject to summary dismissal. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

## IV. DISCUSSION

As noted already, Petitioner has raised eleven arguments alleging ineffective assistance of counsel. Properly analyzed, none of these arguments actually allege that his attorney provided constitutionally deficient assistance. Rather, they attempt to re-litigate issues already settled at trial. Nonetheless, to be thorough, the court addresses Petitioner's claims in turn.

### A. Petitioner's First Claim is Without Merit.

Petitioner first claims that his counsel must have failed to investigate potential witnesses because he did not call upon Ms. Smith to testify at the suppression hearing. The allegation that Petitioner's attorney failed to investigate the possibility of calling Ms. Smith as a witness is belied by the record. Petitioner's attorney subpoenaed Ms. Smith to appear at the suppression hearing. (Crim. Doc. #45 at 4). He had clearly done his homework, for had he not investigated the possibility of using Ms. Smith at the suppression hearing, he would surely been unable to subpoena her to appear at the suppression hearing. This assertion is therefore wholly incredible in the face of the record and due to be summarily dismissed. *Blackledge*, 431 U.S. at 74. Moreover, Plaintiff's argument that Ms. Smith's trial testimony was in conflict with the suppression hearing testimony of Sergeant Treadaway, and that the court would have granted the motion to suppress if it had heard earlier from Ms. Smith, is simply wrong.

14

**B.      Petitioner's Second Claim is Without Merit**.

Petitioner's second claim actually contains two, seemingly contradictory, arguments. Petitioner alleges that his lawyer failed to be adversarial because he failed to call a government witness, Ms. Smith, to the stand.  Petitioner also asserts that his trial counsel was ineffective because he did call two other government witnesses to the stand.  To be clear, the claim that an attorney failed to be adversarial is an exceptional allegation that counsel was not representing the interests of his client. *See United States v. Cronic*, 466 U.S. 648, 656-57 (1984).  After carefully considering Petitioner's claims, the court finds they are wholly lacking in merit.

First, while Petitioner criticizes his attorney for failing to examine Ms. Smith at the suppression hearing, the record makes clear that his trial attorney never ceased to serve Petitioner's interests.  Ms. Smith was not examined at the suppression hearing, but that was not the result of any indifference or deficiency by Petitioner's attorney.  Rather, the simple reason why Ms. Smith did not testify at the suppression hearing is that she arrived too late to the courthouse even though Petitioner's attorney subpoenaed her to appear.  (Crim. Doc. #45 at 4).  Nevertheless, Petitioner's trial attorney was able to serve his client's interests, introduce the documents he wished to admit, and build the Defense's case using the witnesses that were available, Sergeant Treadaway and Officer Hutchins.  (*Id.* at 22).

Because those two witnesses were members of the Birmingham Police Department, Petitioner argues that his attorney, by examining law enforcement officers, abandoned him and began to act as a prosecutor.  This line of reasoning misses the mark.  Because the suppression hearing concerned Officer Hutchins' impressions of the crime scene prior to the arrest, and because Petitioner bore the burden of proof on his motion to suppress, it was only reasonable (if not

15

altogether necessary) for Petitioner's attorney to call the police officers to the stand.  While doing so, he continued to advance the theory put forth in the motion to suppress by challenging Officer Hutchins' account of the events and attacking the competence of the police department.  (Crim. Doc. #45 at 12, 38-44, 49-50).  At no point did Petitioner's attorney cease to serve Petitioner's interests.  Nor did his representation of Petitioner fall below any objective standard of reasonableness.  Therefore, the court finds that Petitioner's assertion of ineffective assistance in this regard is wholly conclusory and unsupported by the record.  This claim is therefore due to be dismissed.

### C.    Petitioner's Third Claim is Without Merit.

Sergeant Treadaway testified during the suppression hearing that the technology and procedure at the Birmingham Police Department regarding stolen vehicles includes multiple layers of police reports and paperwork, such that it would not be unusual for a stolen car report to remain in the NCIC database for months when, for example, a victim who recovers his car from the police does not report the recovery to the Auto Theft Division.  (Crim. Doc. #45 at 29-31).  Petitioner believes that Ms. Smith's testimony at trial contradicts Sergeant Treadaway's suppression hearing testimony.  Therefore, he claims that his attorney performed deficiently when he failed to challenge Sergeant Treadaway's testimony *during the suppression hearing* with the testimony Ms. Smith delivered afterward, during the trial.

The court initially notes that Plaintiff cannot demonstrate "cause" regarding the failure to interview or call Ms. Smith as a witness at the suppression hearing for several reasons.  First, as it relates to his claim regarding a failure to investigate, Petitioner's assertion is nothing more than a bare allegation unsupported by any specifics.  His failure to substantiate this aspect of his claim in

any way subjects it to summary dismissal. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Lynn v. United States*, 365 F.3d 1225, 1239 (11th Cir. 2004).

Second, Petitioner's contention concerning the investigative work performed by trial counsel is entirely contradicted by the record, which details the extent of work performed by counsel in preparing his defense. Petitioner's counsel attests that during the course of his representation, he met with Petitioner on six separate occasions, between October 2007 and January 2008, to discuss the facts of the case, possible defenses, strategy, the potential sentence, and to prepare for trial. (*See* Doc. #12-1 at 1.) In addition, counsel received and reviewed discovery documents (including police reports, toxicology reports, ATF memoranda, and photographs), filed several pretrial motions, issued subpoenas, and, together with his client, met with the prosecutor on two occasions in an attempt to resolve the case by way of a negotiated plea agreement, which Petitioner ultimately rejected. *Id.* at 1-2. Trial counsel's affidavit also demonstrates that Petitioner's conclusory claims lack merit. Counsel acknowledges that he had sufficient time to investigate the case, meet with his client, and obtain necessary information. (*Id.* at 2). He was prepared for the suppression hearing and trial. In short, counsel fulfilled his duty to investigate as required by the law. *See Bogan v. Thompson*, 365 Fed. App'x. 155, 157 (11th Cir. 2010)(noting criminal attorney has a duty to make reasonable investigations).

Likewise without merit is Petitioner's claim that his counsel's failure to interview Djuana Smith, an administrative clerk assigned to BPD's Auto Theft Division, was ineffective assistance. Petitioner insists that if Ms. Smith had been called, this court would have been persuaded to suppress the evidence. This argument is without merit for at least two reasons. First, complaints concerning uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of

trial strategy and allegations of what a witness would have testified to are largely speculative. *West v. Sec., Dept. of Corrections*, 151 Fed. App'x. 820, 823 (11th Cir. 2005), citing *United States v. Guerra*, 628 F.2d 410, 413 (5th Cir. 1980). Second, the court heard the testimony of Ms. Smith at trial; that testimony would not have made a difference at the suppression hearing in this case.

Nor can Petitioner demonstrate "prejudice." Obviously, Petitioner's attorney cannot be faulted for failing to challenge Sergeant Treadaway's statements with testimony that had not yet been delivered. However, even if Petitioner's attorney had a time machine (or, more simply, had renewed his motion to suppress immediately after Ms. Smith's testimony), Petitioner fails to show prejudice. The question the court sought to answer at the suppression hearing was whether Officer Hutchins had a reasonable suspicion to stop and search Petitioner. (*See* Crim. Doc. #45). The court found that Officer Hutchins had developed a sufficiently reasonable suspicion before consulting the NCIC database based on the history of drug crimes in the area he patrolled and the suspicious way in which the cars were parked in the middle of the road. (*Id.* at 52-54). The Eleventh Circuit agreed. (Crim. Doc. #56). Even assuming that there is a conflict between Ms. Smith's testimony at trial and Sergeant Treadaway's testimony at the suppression hearing, such a conflict would not have made a difference at the suppression hearing because the accuracy with which Sergeant Treadaway described police procedure is irrelevant to the question of whether Officer Hutchins had a reasonable suspicion to stop and search Petitioner. As there was neither deficient performance nor prejudice, Petitioner's third claim fails.

### D.      Petitioner's Fourth Claim is Without Merit.

Three weeks prior to the arrest that ultimately resulted in Petitioner's conviction and sentence, Petitioner and his brother, Nicholas Bryant, were arrested by Detective Boackle for a drug

offense involving the same 1995 Buick La Sabre.  At the time, the 1995 Buick LeSabre had not been reported stolen.  (Petitioner's brother, Charles Bryant, reported it stolen the next day.)  Therefore, Petitioner reasons, Detective Boackle would have known that the car was not actually stolen.  Had he been with Officer Hutchins on the night of December 10, 2006, he could have theoretically recognized the car and known that it was not in fact a stolen car, but merely a car that had been previously impounded for drug-related criminal activity.  Therefore, according to Petitioner, his attorney should have called Detective Boackle to the stand and the failure to do so constitutes ineffective assistance.

There are a number of problems with this whimsical hypothetical.  First, Detective Boackle was not present with Officer Hutchins when the latter encountered the car.  Undaunted by this straight forward fact, Petitioner submits that Detective Boackle's knowledge of the status of the car can be imputed to Officer Hutchins because they are both police officers.  Essentially, Petitioner asks the court to interpret the doctrine of imputed knowledge to mean that all police officers share a collective mind that enables them to communicate with each other through means resembling using telepathic powers.  To be clear, Birmingham's men and women in uniform may often be heroes, but they are not superheroes.

Second, even assuming that on the night of the arrest Officer Hutchins could be charged constructively with the knowledge that Detective Boackle possessed about the car, such information would have only tended to *bolster* Officer Hutchins' reasonable suspicion that Petitioner's car was engaged in drug-related criminal activities.  The 1995 Buick LeSabre had already been used before by Petitioner and his brother to commit (what police suspected were) other drug offenses.  That fact,

when coupled with the already suspicious circumstances at the time of the arrest, would only make the suspicion of a drug transaction *more* reasonable.

Finally, the car was listed as stolen in police records because Petitioner coached his brother (the registered owner, Charles Bryant) to report the car as stolen so that he could retrieve it for Petitioner's use. Indeed, it would have been (at best) a questionable tactic for Petitioner's trial counsel to have called Detective Boackle to the stand because, in all likelihood, that would have only drawn attention to the facts related to (1) his earlier arrest on drug charges and (2) his scheme to falsely report the car stolen. (Civ. Doc. #12-1 at 3). Therefore, the court finds neither deficient performance nor prejudice on this issue.

### E.     Petitioner's Fifth Claim is Without Merit.

Petitioner argues that his counsel provided him ineffective assistance because he failed to use a dispatch report to impeach Officer Hutchins' testimony at the suppression hearing. Again, this argument is off target. When evaluating claims of ineffective assistance of counsel, courts do not require attorneys to pursue every possible legal theory. "The test for ineffectiveness is not whether counsel could have done more; perfection is not required." *Waters v. Thomas*, 46 F.3d 1506, 1518 (11th Cir. 1995). Here, Petitioner's attorney pursued a strategy of challenging Officer Hutchins' basis for stopping Petitioner rather than a shotgun strategy of generally impeaching his credibility. That is a strategic decision he made based on his reasonable judgment. As such, the court cannot find this to constitute ineffective assistance of counsel.

### F.     Petitioner's Sixth Claim is Without Merit.

Petitioner's sixth claim is that his attorney provided ineffective assistance by declining to call him to the stand or to notify him of his right to testify at the suppression hearing. There are really

two issues here: (1) whether the attorney's decision not to call Petitioner to the stand constitutes ineffective assistance and (2) whether the attorney's failure to notify his client of his right to testify at the suppression hearing constitutes ineffective assistance.  The court finds no ineffective assistance of counsel in either event.

Regarding the decision not to call Petitioner to the stand, such a tactical decision cannot be said to amount to ineffective assistance.  As Petitioner's attorney has testified in his affidavit, he declined to call Petitioner to the stand because he was afraid it would expose him to questions regarding his role in having the Buick falsely reported to be stolen.  (Civ. Doc. #12-1 at 3).  This fear was reasonable in light of the circumstances of the case, so the court finds the decision not to call Petitioner to the stand does not constitute deficient performance.

The second issue presents a trickier academic question, but one that nevertheless does not aid Petitioner here.  Does an attorney who, in the course of selecting witnesses for a pre-trial suppression hearing, determines that calling his client to the stand would likely hurt his client's chances of prevailing at the pre-trial hearing nonetheless have an obligation to notify his client of his right to testify at the pre-trial hearing?  The answer to this question is not critical in this context because the core issue to be determined in this proceeding is whether Petitioner's attorney rendered ineffective assistance of counsel.  As such, Petitioner must show *both* deficient performance *and* prejudice. For the reasons noted above, the court doubts that Petitioner's attorney performed deficiently in this respect; however, in any event, it is absolutely confident that such conduct resulted in no prejudice.  Even assuming arguendo that Petitioner, if informed of his right to testify at the suppression hearing, would have decided to testify at the suppression hearing, this question remains – what would he have testified to?  The question to be answered at the suppression hearing was

whether Officer Hutchins possessed a reasonable suspicion to stop Petitioner. There is no reason to believe that Petitioner could provide any information relevant to Officer Hutchins' mental impressions prior to his arrest. Thus, there is simply no showing of prejudice here.

**G.      Petitioner's Seventh Claim is Without Merit**.

Shortly after his arrest, Petitioner made a sworn statement admitting his guilt with respect to the underlying drug offense. The voluntariness of this statement was not challenged at trial. Petitioner now charges that his attorney should have challenged the voluntariness of the statement pursuant to *Jackson v Denno*, 378 U.S. 368 (1964), and argues that the failure to raise such an argument constitutes ineffective assistance of counsel. This argument cuts no ice at all. Reasonable tactical decisions made by counsel concerning trial strategy, even tactical decisions that appear unfavorable in hindsight, do not constitute ineffective assistance of counsel. *Johnson*, 256 F.3d at 1176. In his affidavit, Petitioner's attorney indicates that he considered the possibility of raising a *Jackson v. Denno* challenge and discussed that possibility with Petitioner. (Civ. Doc. #12-1 at 4). However, the Defense ultimately decided not to pursue such a challenge. The court has reviewed counsel's affidavit and concludes this decision appears to be the result of tactical considerations, not sub-par representation. Therefore, the court cannot find deficient performance here.

**H.      Petitioner's Eighth, Ninth, and Tenth Claims are Flatly Refuted by the Record**.

Three of Petitioner's claims are clearly and affirmatively contradicted by the evidence in the record. Petitioner alleges in his eighth claim that his attorney failed to file a motion to suppress the cell phone wallpaper photograph showing him holding a gun. (Civ. Doc. #1 at 44). Contrary to this assertion, Petitioner's attorney actually did file a motion in limine to suppress that picture. (Crim. Doc. #23). In his ninth claim, Petitioner alleges that his attorney failed to argue on appeal that

22

Officer Hutchins lacked probable cause to make the arrest.  (Civ. Doc. #1 at 40).  That was actually the first argument Petitioner's attorney raised on appeal.  (Civ. Doc. #12-1 at 37-48).  Petitioner's tenth claim is that his attorney performed deficiently for failing to point out that Petitioner was not convicted by a full jury of twelve jurors.  (Civ. Doc. #1 at 40-41).  The verdict was reached by twelve jurors.  (Civ. Doc. #11).  None of those claims require any further discussion.

## I.    Petitioner's Eleventh Claim is Without Merit.

Finally, Petitioner's sole remaining argument contests that the prosecutor made four inappropriate remarks during his closing statements and his attorney erred by failing to challenge them.  (Crim. Doc. #1 at 32-35).  Petitioner argues that, through these comments, the prosecutor improperly vouched for (1) the credibility of Officer Hutchins and (2) Charles Bryant, and prejudicially inflamed the jury by (3) arguing that Petitioner fled Officer Hutchins because he wanted to avoid being caught with incriminating drugs and (4) that convicting Petitioner would take another drug dealer off the streets.  (*Id.*).  But these arguments miss the mark, not only because they are wrong, but because the issue in a claim of ineffective assistance of counsel is the performance of the defendant's counsel, not the prosecutor.

As an initial matter, the court has reviewed the record and does not agree with Petitioner's allegations that the prosecutor either improperly vouched for the credibility of witnesses or sought to inappropriately inflame the jury.  Improper vouching occurs when the prosecutor places the prestige of the government behind the witness by either making explicit personal assurances of the witness' credibility or by indicating that information not presented to the jury supports that testimony.  *United States v. Epps*, 613 F.3d 1093, 1100 (11th Cir. 2010).  The prosecutor's statements, when read in context, do not reveal an attempt to use the prestige of the government to

23

bolster the credibility of witnesses.  The comment regarding Officer Hutchins was merely a narration

of his impressions on the night of the arrest:

> And so the officer pulls up to the same intersection, turns left, and falls in behind the Buick. He doesn't know that car from Adam's house cat. Never seen it before in his life.  As he's **going down the road, as good officers do**, they sometimes will use their onboard computer and punch in the tag and see if there's anything about the car that he needs to be concerned with. Comes back the car has been reported stolen.

(Trial Tr Vol 4 572)(emphasis added).  Likewise, the prosecutor's remarks regarding Charles Bryant

do not bear any resemblance to improper vouching:

> With that in mind, let me bring up the name Charles Bryant. Bless his heart. That man's got 11 children, and you can tell from his testimony, he was sometimes confused. Didn't know exact dates, didn't know how many times he had been to the impound lot; but he was certain of a few things. **He was certain that he sold that car**, and that testimony is unrebutted. you have heard nothing to the contrary. He came in and testified that he sold that car to the defendant for $2,000. He got $1,000 up front and another $1,000 a few weeks later.

(Trial Vol 4 at 573)(emphasis added).  Here, the prosecutor was merely recalling testimony.  And

while the prohibition against vouching forbids arguing credibility based on the reputation of the

government office, it does not forbid a prosecutor from making arguments about credibility.  *United

States v. Lopez*, 590 F.3d 1238, 1256 (11th Cir. 2009).  Such a broad interpretation of the prohibition

against vouching would amount to a prohibition against lawyering.

Similarly, Petitioner's arguments about the prosecutor's allegedly inflammatory remarks are

off target.  While describing Petitioner's attempt to escape arrest, the prosecutor told the jury:

> So had he [Bryant] managed to get away from the police with his gun and 400 bucks, in all likelihood he wouldn't be sitting here today. Now, he wanted his gun, and he wanted his money, as much as he

24

> could take; but he wanted to get the heck away from those drugs.
> Unfortunately, that didn't happen for him.

(Trial Vol 4 at 578).  Petitioner argues that this remark was improper and highly prejudicial "because there was no evidence [introduced] at trial [as to why he] ran away from the car" and the jury was forced to consider the possibility that Petitioner ray away to flee inculpatory evidence.  (Civ. Doc. #1 at 46).  This argument does not hold water.  As the Eleventh Circuit explained in *United States v. Iglesias*, "the sole purpose of closing argument is to assist the jury in analyzing the evidence." 915 F.2d 1524, 1529 (11th Cir. 1984); *see also United States v. Nixon*, 918 F.2d 895, 905 (11th Cir. 1990).  Thus, the prosecution is entitled to offer its theory of events and articulate inferences that may be reasonably drawn from the evidence that was before the jury.  *Jones v. Secretary, Department of Corrections*, 607 F.3d 1346, 1350 (11th Cir. 2010).

The fourth comment Petitioner cites came at the end of the prosecutor's closing remarks:

> Ladies and Gentlemen, throughout your lives, I'm sure you've heard people say why doesn't someone do something about that. Why doesn't someone do something about that. that very question is being asked in this courtroom today. You see, ladies and gentlemen, the United States Government is here today to ask you to please do something about that. We're all citizens of this area. And we all want to have safe streets. And by returning a verdict of guilty as charged, you'll be doing your part in making our streets just a little bit safer by ensuring that one less armed crack pusher isn't walking amongst us anymore. Thank you.

(Trial Vol 4 at 606).  Petitioner contends that these comments were improper because they "aroused and excited" the jury, causing its members to believe that Petitioner "is the one causing all the danger and putting all the drugs on the streets." (Civ. Doc. #1 at 47).  This argument twists the prosecutor's words.  The prosecutor only argued that returning a verdict of guilty would ensure that *one* less drug

dealer would be operating on the streets, not that Petitioner was the source of all drugs and crime and Birmingham.  This argument is without merit.

The court has considered Petitioner's allegations of prosecutorial misconduct and finds that none of them have merit.  As a result, the court notes that Petitioner cannot show prejudice because these arguments, even if raised by his attorney, would have gone nowhere.  However, what matters for ineffective assistance of counsel is not the performance of the prosecutor, but the performance of Petitioner's attorney.  In this case, Petitioner's attorney actually *did* argue on appeal that the prosecutor made inappropriate comments in his closing arguments.  (Civ. Doc. #12-1 at 53-55).  He did not raise the same arguments that Petitioner now alleges; however, he did consider these arguments and exercised his professional judgment in raising the arguments that he did on appeal. (*Id.* at 5).  As such, Petitioner's attorney performed well within the range of professional conduct and the court finds neither deficient performance nor prejudice to warrant a finding of ineffective assistance of counsel.

## V.  CONCLUSION

There's an old adage:  What goes around comes around.  While couched in the language of ineffective assistance of counsel, this petition is actually nothing more than an attempt to obtain a "mulligan" on Petitioner's attempt to suppress the evidence used to convict him.  To be sure, Petitioner's conviction was not the result of deficient performance by his lawyer. Petitioner was caught engaging in a drug transaction, in part, because the car he used had been reported stolen. And the reasons the car had been reported stolen is that Petitioner instructed the registered owner to falsely claim the car was stolen. This is not a case of ineffective assistance of counsel.  Rather, it is a case in which Petitioner's plan of deception caught up with him.  That is no fault of his counsel.

For all these reasons, Petitioner's § 2255 Motion is due to be denied.  A separate order will be entered.

**DONE** and **ORDERED** this _____13th_____ day of August, 2013.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE